ASPLUNDH TREE EXPERT
CO., Appellant

v.

William J. ABSHIRE; James P. Allison; Teresa Amos; Joyce Anayanwa; Johnnie W. Andress, Jr.; Leslie P. Antalffy; Barbara A. Antalffy; David Ashley; Jammie Armor; David Arrizola; Jean E. Backus; Karl T. Baker; Karen M. Baker; Stephanie Ball; Gary Baltis; John Baszkiewicz; Eve Baszkiewicz; James Beckendorf; Cynthia Beckendorf; Michelle Belden; Tina Eileen Berdett; Angel Blackley as Executrix of Estate of Camilla Estelle Hawkins; Don G. Blackmon; Jan Blackmon; Richard Blakes; Edward Blas; Harriet Bliss–Laird; Richard Lloyd Bow; Cynthia M. Boyle; Tara Ann Brazeal; Gary Briggs; Joe Carlos Briones; William Greer Brooks; Robie Brown; Sue Ann Bunner; Richard Cabral; Mark A. Campbell; Ramon Campos; Adam Cardenas; Linda Cardenas; Richard James Carnicle; Marianne Case; Dean Christiansen; Edward J. Cisneros; Davie N. Coker; Linda Constantine; Alta Copeland; Jerry L. Courson; Irene Elizabeth Corbit;

Lloyd Franklin Curry; Adan Cruz; J. Cindy Cruz; Michael S. Daniel; Robert B. Davis; Rodney W. Davis; Carolyn Freyer Degenhart; George Michael Degeurin; Anne Deshotels; Angela Dickinson; Shirley A. Diggs; Mark A. Dominguez; Stanley F. Dodd; David K. Douglas; Karen L. Douglas; Victor Dube; Vincent Robert Dudley; Jan Marie Dudley; Victor Glen Edwards; Judy Edwards; Connie Ellard; James Ellard; Mary McDonald Ellison; David Embler; Deborah E. Embler; Adam P. Espurvoa; Maria E. Espurvoa; Greg Etherington; Gretchen Etherington; Jackie J. D. Ferguson; Edward S. Fisher; Mary S. Flenoy;

Billy A. Fletcher, Sr.; Joyce M. Fletcher; Lacinda Ford; Laura Francis; Ricky Garcia; Jimme E. Gatlin; Georgi K. Georgiev; Maryjane Garton Gibson; Jeff Gillman; Jan Givens; Stephen Gleinser; Betsy Goggan; Martin Goldfarb; Rolando Gonzales; Mindy Graber; Michael Graham; Alicia Graham; Haley's Triple H Ranch LLC; Jose Guerra; Joyce Haber; Mark A. Hanson; Kathy L. Hanson; Cecil E. Harbaugh; Samuel E. Harkins; Mary B. Hay; David Hermes; Beth Hermes; Elodia Hernandez; Terrel Herring; Amanda Herring; G. H. Hickman; Philippe Hilaire; Richards Hilaire;

Edward Paul Hoffman; Annette Holmes; H. L. Homrighaus; Charles Horton; Eileen Hulme; John W. Hunt; Loraine H. Hunt; Laura Lea Jackson; Bill Jolly; JMH, Inc.; Phyllis A. Kalish; Fred Kawaja; Steve Keselik; Beth Keselik; W. E. Keller; Connie J. Kelly; Harris L. Kempner; Joellen A. Kerrigan; Steven D. King; Linda M. King; Shirley Kleypas; James G. Kohl; Katherine S. Kohl; Christy Kosser; Susan Kradjel; Sharon Kramer; Walter Kuster; Patty Kuster; Jesus Landero; Richard D. Larson; Lee Lasher; Bridget E. Laws; Anne M. Layton; Steven Dale Leclaire; Anthony A. Levermann; John A. Levermann; David L. Lewis; Tracy N. Lewis; Mary E. Lewis; Timothy D. Loe; Mary E. Loewe; Ronald J. Long; Celina D. Long; Daniel Lopez; Melissa Lopez; Charles Lowe; Marilyn Lowe; William K. Mabry; Dennis R. Maciejka; Richard West Maconi; Patsy Maddox; Paul G. Maddy; Dollie Maddy;

Pauline A. Magee; Maria Orozco Maldonado; Michael Joe Mallicote; Sara Beatriz Mallicote; Elliott Manferd; Rebecca Manferd; Jr. Maranda; Martha Maranda; Juanita Maranda; Randy V. Marburger; Cora B. Marburger;

Andrew Margarett; Matl Family Cemetery Assoc.; John A. Matl; Ruby R. Matl; Terrell Matlock; Dorothy Matlock; Thomas W. Matocha; Sheryl Lynn Coles Mays; Teressa Kay McCarthy; Brenda J. McCurry; Kenneth L. McNeil; Asuncion A. Mendoza; Rogelio Dungo Mendoza; Wayne Meuth; Larry L. Mills; Shari R. Mills; John D. Mican; Bill A. Mitchusson; Kay K. Mitchusson; Patricia L. Muller; John T. Murray; Laura A. Murray; Cody Murphy; Lori Murphy; Judy Murphy; Michael G. Murphy; Alan R. Nalder; Richard B. Newberry; Tia Marie Clardy Niehus; Ronald Nolan; Kevin P. Owens; Ray B. Pack; Satish Kumar Paladugu; Don Parker; Vicki Parker; Gerald W. Parks; Sharon Ann Parks; Crea T. Parsons; Joe A. Patterson; Daniel Pereira; Barbara Pereira; Ted Peters; Lisa Picciandra; Michael Picciandra; Stephen Podkamensky; Eric L. Poe; Cyndi S. Poe; Jon Pollard; Freddie L. Poor; Roland J. Poppy; Patrick Pratt; Dennis J. Prihoda; Leigh Ann Privitera as Executrix of Estate of Marilyn Privitera; Jospeh K. Pullen; Patricia L. Pullen; The Purcell Family Trust; Barbara J. Purvis; Kelly Pustka; Donald L. Putman; Gregory Reece; Christin Reece; Roger Reid; Rosaena Resendez; Eduardo E. Reyes; Glen L. Reynolds; Bertha Rhea; Warren E. Richter;

Carol Richter; Elizabeth Rinker; Benton A. Roberts; Alton Robinson; Jerry Ronquillo; Genovevo Rubalcaba; Joseph A. Russo; Slyvia Russo; William Herbert Rymer; Joseph L. Salone; James Salvitti; Nanette Salvitti; Gaylan Sampson; Ernest Schrab; James Scoggins; Terry Seidat; Henry R. Sellards; Hobert S. Seymore; Joan C. Smiley Shaw; Stephen B. Shaw; Rick Shelly; Patricia Shelly; Raymond D. Shelton; Shelly Silveira; Tony B. Simmons; Evelyn M. Simmons; Craig B. Sommers; Eric Shull; Ella Sheryl Smart; Terrence J. Smith; Vaughn R. Smith; Ricky Snell; Wanda Snell; Helen M. Stamps; Joseph M. Stasulli; Rosario C. Stasulli; Beatrice Stewart; Shelton Stohler; Barbara Stohler; Ronnie G. Tabor; Curtis Tallman; Vicki G. Tallman; Joy D. Tatum; Timothy R. Taylor; Joseph S. Ternus; Russell Terrell; Texas Kiln Products, Inc.; Timothy Tewalt; Susan Tewalt; Jan M. Thompson; Louis J. Thompson; Kelvin Thompson; William S. Thompson; Michael Tompkins; Steve R. Torees; Judy Thurston; Linda Torgerson; Cher D. Travis; James Roy Traweek; Elizabeth P. Tschudi; Paula Marie Tyre; James Tyson; Raul Valdez; John R. Vare; David Vasquez; Roger Vasquez; Mike Vega; Debbie Vega; Ronald W. Vigil; David Wade; Joel Wade; Warren D. Weber; C. Ann Weber; Linda K. Weber; Karen Wehr; Lisa D. Weinstein; William Russell Wheeler; Curtis White; Larry White; Claudia Witherspoon; Zinmon Jessie Whitter; Darrell C. Whitworth; Scott K. York; Gary J. Yurkiewicz; Gerald Zampanti; Jimmy L. Allison; Janis B. Allison; Patrick E. Amy; Ruth A. Amy; Linda Erwin; Dennis Andel; Erika Anderson; Paul Anderson; AQUA Water Supply Corp.; Cornelia Arhelger; Melvin Armstrong; Catherine Armstrong; George Arnell; Janet Arnell; Claudia Ashlock; Steven Ashlock; Jeff Bader; Patti Bader;

J. P. Bailey c/o Donna Grace; James Gary Baker; Barbara J. Baker; Marian Baker; Melvin E. Baker; Betty J. Baker; Edward A. Balusek; Norma Bangs; Charles Bangs; Marian J. "Joey" Baron; Barbara A. Barrett; Michael C. Barrett; Donald Barron;

Julie Barron; Linda Griesenbeck; Bastrop County Emergency Services District No. 2, James Allen, President; Bastrop Independent School District c/o Steve Murray; Bruce Bearden; Vonda Bearden; Joe Ray Bennight; Natalie Bennight; Jerry M. Benson; Margaret Benson; James Berkner; Dorothy Berkner; Patricia A. Biglin; Rick L. Blakely; Lisa Akard Block; Bluff Springs Food Mart, Inc. c/o Tariq Majeed; Katharina Bolinger; Rhonda Bonderson; Gary Bonnette; Cindy Bonnette; Bari Elese Bowles; Robert Bridges; Barbara Bridges; Ronald Bridges; Benjamin H. Bright; Connie Bright; Mark Brochstein; Michael D. Brooks; DeAnna Lynn Brooks; Connie Brown c/o Kevin Mechura, POA; Rodney Brown; Darlene Bryand; Quentin R. Jordan; Mitchell Buerger; Pamela Buerger; Max Butler; Janice Butler; Joy E. Caffey; John E. Carey; Anne Carey (Barnes); Michael L. Caprenter; Angelica Caprenter; Sina Chandler; Thomas Doyle Christian; Dixie Ruth Christian; Nancey Chumley; Margaret Clakley c/o Sheri Bartsch, daughter; Joseph C. Clemmons; Jacqueline Clickner c/o Richard Clickner, POA; John Cline; Linda Cline; Vito Colavito; Collins Properties, LLC; Judith Dale Connelly c/o Carol Brandy; Marvin C. Conrad, Jr.; Terry L. Conrad; David Tracy Conti; Erichca Lynn Conti; Darryl Cook; Glenn A. Cordell; Nancye Cordell; Laura Cox; Marc Cox; Tiffany Cox; Paula Cox; Ana Cox; Micah Craddock; Frank Craddock; Norma June Craig; Susanne Marie Crane; Janet Cseresznye; Gerald Cseresznye; Guadalupe De Los Santos; Maria Levrie Barber; Edward Dear; James Denny; Donna Deteau; James L. Drury; Emil Doyle Dubec dba Pro-D Builders LLC; Robert J. Dulovics; Kathleen K. Dulovics; James Dunbar; Sherry Dunbar; Jacquelyn Anne Hartwell Eason; Marisa E. Eatock; Jason J. Edwards; Denise Edwards; Joe Ellett; Lynn Ewert; Richard Fender; Mary Ann Fender; Jack Figart; Mary Nelle Figart; Stephanie Figueroa;

Oskar Fink; Brigitte Fink; Bennie Fore, III; Marianne Wakehouse; Kelvin Fouts; Johnny Stock; Christine Fox; Stephen A. Fox; Ernest R. Fox Living Trust; Judge Randy Fritz; Holly Fritz; William J. Forst; Judith Fruchter; John Gargus; Anita Gargus; Michele Gay; Shelley Holmes; Christopher Kirker; Carlos Gaytan; James Gerhardt; Olena Gerhardt; Larry Gfeller; Kathleen Gfeller; Angela Gibson; Bryan Goertz; Debbie Goertz; William Gonzales; Kizzie Gonzales; Tom Gostomski; Robert Gregory; Bettye Groom; Floyd Johnson; Robert Gurley; Jana Gurley; Daniel Gutierrez; Julie Gutierrez; William Wayne Hall; Deborah Hall; WW & DM Hall Trust; Thomas Haptonstall; Irma Haptonstall; Bealuh Laverne Hardee c/o Bryson Hardee; Bryson Hardee; Willie R. Hargrove; Mary Lynn Harmon; Roy Harmon; Steven W. Harris; Bill Haschke; Andrea Haschke; Wayne E. Hatfield; Helma I. Hatfield; Frans Hendriks; Roselly Hendriks; Daniel Hepker; Cynthia Hepker; Luz Hernandez; Shawn Herring; Chris Gustafson; Joseph J. Herrman; James Hershberger; Dail Hershberger c/o Keridwyn Hershberger and James Hershberger; William Hewett; Dorothy Hewett; Willian Higgins; Deborah Higgins; William & Deborah Higgins Revocable Trust; James B. Hoffman; William Allen Hoffman; Bryan Hohenstein; Michael Hojnacki; Cordelia H. Holmes; David Holmes; Rebecca Holmes; Jerry Hooten; Debra Hooten;

Michael Horecka; Catherine Horecka; W. Roy Horton; Virgie Horton; Michael George Hritz; Johnny D. Hughes; Rosely A. Hughes; Stephen Hughes; Ismaela Hughes; Phillip Hurt; Troy Hyatt; Robert Ingrum; Thomas P. Jackson; Karen Jackson; James D. Jennings; Julianne Jones; Greg Jones; Leona L. Jones; Robert D. Jones; Dennis Kane; Margaret Kane; Marilyn Kellar; Robert Kelly; Gaile Kelly; Coitt Kessler; Kristi Kessler; Donald King; Deanna King; Thomas Kirchner; Allen Kleypas; Dan Kohlert; Brenda McClelland Kohlert; Larry Kretschmar; Jean Kretschmar; L & L Ranch c/o Robert K. Long; Isabel Lambertz; Monte Land; Jill Land; Lawrence K. Land; Janis K. Land; Lisa Laney; Chester Lathan;

Brenda Gay; Timothy Lee; Darlene (maiden name Burr) Lincoln; John H. Lipscombe; Robert J. Loucks; Judith E. Loucks; Kimberly (Bevins) Magaldi; Connie Hopson; Richard C. Mangiamele; Colin Mason; Kimberly Mason; Tanya Mathison; Cary Porter; Eleanor Maynarich; Wayne McDowell; F. Stacy McDowell, deceased; John McGinley; Rollie Gregory; Ronnie McKelvey; Julie McKelvey; Sandra B. McLain; James Merchant; Julia Merchant; John C. Miller; Shelli Miller; Mace Miller; Georgia Miller; James Minto; Gayle Minto; Robert L. Mitchell; Kristan L. Mitchell; Sara J. Moers; Robert Moers; Lawrence Momey; Judy Slater Moore; Jerry Slater; Lee Moore; Loretta Green; Roger Green; Joe Morales; Lynelle Morales; Ashby Morrison; John Moum; Brenda Moum; Susan Garner; Debbie (Marrs–Campion) Murphy; Wayne Murphy; Ashley Mutschink c/o JBA Properties LLC; Henrietta Nations; Richard Nations; John J. Navar; Lynette C. Navar; Stacey Tiner Nevarez; Kandra Niagra; Dennis J. Norman; Laurie J. Norman; Edgar Nyc; Frederick F. Nyc, III, c/o Billie Thibeaux; David Ogilvie; Lou Ford Nitkin; Fernando Orozco; Juan Ortiz; Teresa Ortiz; Ronald Overpeck; Denise Halle; Barbara Palmer; Robert Palmer; James Parrish; Mark Patterson; Fran Patterson; Scott Pearson Aimed Investments, Inc.; Mary Helen Pena; Jearol Jackson; Julio Perez; Charles Dempsey Peters; E. W. Peters; Barbara Peters; Scott Pierron; Linda Pierron; Elizabeth Pittman; James H. Polsky Skipol, Inc.; James H. Polsky; Marcie Polsky; Vivian Primeaux; Gary Raemsch; Mark Raemsch; Bernie Raemsch; Frank Rainosek; Lorraine Reagan; Marisa Rendon; Sam Roberson; Arlene L. Sawyer; Matilde Rodriguez; Tomas Rodriguez; Kathryn Rogers; Thomas Claiborne; George F. Rohr; Virginia C. Rohr; Willie Ross; Edna L. Ross; Guy Roush; Kerri Roush; Robin Rudloff; Brian Rudloff; Anielea Rust AKA Properties of North TX; Ernesto Salazar; Sarah Salazar; Michael Samson; Carol Hanley; Otilia Sanchez; John A. Sandoval; Minerva Sandoval; Darlene Vaughan Saunders; Khaleel Sayyed; Rachel (Simpson) Scales; Rickey Alan Schoppe; Jack A. Schumacher; Shirley Schumacher; Rex A. Schumacher; Shirley and Rex A. Shcumacher Loblolly Pines Village Ltd; Stephen Schwettmann; Seabolt Investments; David C. Jones, M.D.; Allan W. Seekatz;

Kellye S. Seekatz; Jon A. Seitz; Mary Sepeda; Sandra Gonzalez (daughter); Sofia Sepeda; Jimmie Sepeda; Jack Shelton; Tanya Shelton; William Sigle; Sophia Sigle; Janie Sue Simmons; The Janie S. Simmons Revocable Lifetime Trust; Roger Slaughter; Peggy

Jane Smith Trust; John D. Smith, Jr., Trust; Diane S. Simpson Trust; Bruce Smith Trust c/o T.L. Smith Jr. Trusts; Bruce Smith; David Smith; Shannon Smith; Lisa Quackenbush Smith; Smithville Independent School District c/o Howard S. Burns, Jr.; Jerry Snyder; Debbie Somers; Gerry Warner; James Sowell; Mildred Sowell; Steven Stamper; Marsha Stamper; Ann E. Steele; Donald & Patricia Steffe Revocable LivingTrust; Carson Stephens; Jeanette Stephens; Carson Stephens FBO Equity Trust Company Sterling Trust Custodian FBO Carson Stephens IRA; Shirley T. Stinson; Walt M. Stischer, Trustee The Walt M. Stischer Living Trust; Terry Swanson; Joan Swanson; Harvey Symm; Josephine Symm; Charles Tausch; Kasey Tausch; Carolyn V. Terrell; Billie Thibeaux; Terry Thibeaux; Emory A. Thomas; T&S 2000 Family Limited Partnership; Belinda (Williams) Tolbert; George Traugott; Alice Traugott; Charles Trautman; Cave Creek Properties LLC; Markus Trillsch; Virgil Tripp; Sherida Tripp; Sherri Tullos; Paul C. Tuttrup; Maria Tuttrup; Virgil A. Van Cleef, III; Scottie Vandiver; Rhonda Vandiver; Rainer A. Vanoni; Jimmie Ann Vaughan; Shelton Vaughan; Anne M. Vaughan; Kathleen A. Vaughan; Laurier Vocal; Gisele Vocal; Susan Voelzel; Graham Voelzel; Debra Vukelich (Rocha); Donald Walker; Epifania Walker; Kimberly Walker; James Walker; Conrad Gordon Walton, Jr.; Laura Ann Walton; Charles Watt; Deborah Watt; Gary Wehr; Deborah Wehr; Sherry Wetzel; Carter White; Norman Whitlock; Michael A. Wiles; Elizabeth J. Wiles; Raachael Williams; Debbie Williams; Drew Williams; Donnie Williamson; Deborah Williamson; Walter Winslett Representing Dorothy H. Winslett, Jeri Nell Winslett, and H.R. Winslett Trust; D.C. Wofford; Richard A. Wolforth; Rudy Woods; Janice Woods; Laura Yannuzzi; Wayne E Yeo; John G. Young; Sandra Young; Rose M. Yound; and John Early, Appellees [1]

NO. 03–16–00760–CV

Court of Appeals of Texas,
Austin.

Filed: March 24, 2017

---

1. For purposes of this appeal, we will refer to all of the appellees as the Bastrop Plaintiffs.

Joseph R. Russo Jr., Darrell A. Apffel, John Andrews, Greer, Herz & Adams LLP, Andrew J. Mytelka, Greer, Herz & Adams LLP, Galveston, TX, Robyn B. Hargrove, S. Abraham Kuczaj, III, Ryan Squires, Scott Douglass & McConnico LLP, William G. Rossick, Putonti, Escover, & Rossick, PC, Anooj Thakrar, Grotefeld Hoffman, Austin, TX, Lauren Arisco, Apffell Legal, PLLC, Angela Olalde, Greer, Herz & Adams LLP, League City, TX, Jeffry H. Ray, Ray McChristian & Jeans PC, El Paso, TX, Robert D. Kizer, Manor, TX, Joe Grady Tuck, Law Office of Joe Grady Tuck, Bastrop, TX, Mark Grotefeld, Chicago, IL, For Appellees.

A. David Bona, Alex D. Cheng, Randy W. Gimple, Carlson, Caladine & Peterson LLP, San Francisco, CA, Jerry P. Campbell, Nick R. Bray, Neal Edward Pirkle, Naman Howell Smith & Lee, LLP, Waco, TX, Scott Rothenberg, Law Offices of Scott Rothenberg, Houston, TX, For Appellant.

Before Justices Puryear, Pemberton, and Goodwin

## OPINION

David Puryear, Justice

In three separate lawsuits, several hundred individuals sued Asplundh Tree Expert Co. ("Asplundh") seeking damages stemming from the devastating 2011 Bastrop County Complex Fire. In response, Asplundh filed a motion for summary judgment asserting that the suits were untimely because they were filed past the two-year statute of limitations. After convening a hearing on the motion, the district court concluded that the suits were timely because the applicable statute of limitations was tolled, and accordingly, the district court denied the motion for summary judgment. Prior to the district court ruling on the motion, the parties filed a joint request asking the district court to allow them to pursue a permissive interlocutory appeal, and the district court granted that request in its order denying Asplundh's motion for summary judgment. *See* Tex. Civ. Prac. & Rem. Code § 51.014(d) (authorizing trial court to "permit an appeal from an order that is not otherwise appealable if ... the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation"), (f) (allowing appellate court to accept interlocutory appeal); Tex.

R. Civ. P. 168 (permitting "an appeal from an interlocutory order that is not otherwise appealable"). Following that ruling, Asplundh filed an unopposed petition for permissible appeal, and this Court granted the petition. *See* Tex. Civ. Prac. & Rem. Code § 51.014(d), (f). We will affirm the district court's order denying Asplundh's motion for summary judgment and remand for further proceedings.

## BACKGROUND

This permissive appeal stems from the Bastrop County Complex Fire that happened in September 2011. *See 3109 Props, L.L.C. v. Truck Ins. Exch.*, No. 03-13-00350-CV, 2015 WL 3827580, at *1 (Tex. App.–Austin June 18, 2015, pet. denied) (mem. op.) (describing fire as "a 32,000–acre inferno that destroyed over 1,600 homes and killed two people"). Asplundh is a utility contractor that specializes in tree pruning and vegetation management and was hired to maintain electric easements by the electric utility serving the area in which the fire started. After the fire, hundreds of property owners and more than fifty insurers sued Asplundh. In those suits, the plaintiffs pursued claims for negligence, gross negligence, nuisance, and trespass and sought "actual and consequential damages" as well as exemplary damages. The claims by those original plaintiffs have settled.

In May 2012, a class action was filed on behalf of the Bastrop Plaintiffs who were also property owners in the area. Initially, the class action alleged claims for negligence, gross negligence, and nuisance against Asplundh for failing to maintain the easements, which the Bastrop Plaintiffs alleged resulted in the fire and in the fire spreading throughout the affected areas. The final amended petition dropped the nuisance claim against Asplundh, pursued certification for a class composed of

property owners whose property valuation was decreased by 25% as a result of the fire,[2] and sought damages reflecting the decrease in the Bastrop Plaintiffs' property values. Regarding damages, the Bastrop Plaintiffs sought "[a]ctual and exemplary damages" "to recover for the damages for diminished land value losses due to plant life, trees, shrubs and wildlife damaged and/or destroyed by fire." In the event that the class action was not approved, the named class representatives, Franrae Ltd. and Re La Investments, Inc., sought "to recover their respective actual and consequential damages resulting from the aforementioned acts and/or omissions" as well as the diminution-in-value damages mentioned above. Asplundh opposed the class certification and argued that liability, causation, and damages could not be determined on a class basis and that these issues "can only be resolved via individual actions." Ultimately, the district court denied the class certification in March 2015, determined that the requirements for class certification were not met, and explained that liability, causation, and damages "cannot be resolved on a class-wide basis."

Prior to the certification ruling and before the claims by the original plaintiffs had settled, the district court consolidated all of the lawsuits, including the class action by the Bastrop Plaintiffs, into Master Case No. 2012–MCF–01 for pretrial and discovery purposes. Following consolidation, Asplundh moved for "[a] single, binding liability trial" for all of the cases and filed a proposed trial plan. In the proposed plan, Asplundh acknowledged that the original plaintiffs were pursuing negligence, gross negligence, trespass, and nuisance claims and that the Bastrop Plaintiffs were pursuing negligence and gross-negligence claims and stated that, in gen-

eral, "all plaintiffs seek to recover for property damage that they sustained, or insurance proceeds which were paid, as a result of the Bastrop Fire." In addition, Asplundh filed a motion for summary judgment seeking to dismiss all of the four types of claims.

Following the district court's certification ruling, three groups from the Bastrop Plaintiffs filed separate lawsuits against Asplundh in March and April 2015. The first suit was filed by plaintiff John Early, alleged causes of action for negligence and gross negligence, and sought recovery for "actual and consequential damages." The second suit had over 100 plaintiffs; was led by Bryan and Debbie Goertz; asserted claims for negligence, gross negligence, trespass, and nuisance; and sought "actual and consequential damages." The final suit had several hundred plaintiffs, was led by William J. Abshire, and alleged claims for negligence, gross negligence, trespass, and nuisance. In addition, the plaintiffs in the Abshire suit sought "actual and consequential damages" and also listed various types of "actual or compensatory damages" that were not specifically listed in the class action.

After the suits were filed, Asplundh filed a motion for summary judgment against all of the plaintiffs in the three suits regarding the claims for negligence, gross negligence, nuisance, and trespass. Specifically, Asplundh asserted that the suits were filed more than eighteen months after the passage of the "two-year statute of limitations would have expired" and were, therefore, time-barred unless the claims were tolled during that period of time. See Tex. Civ. Prac. & Rem. Code § 16.003 (stating that person must bring suit for injury to property "not later than two years after the day the cause of action

---

**2.** More specifically, the petition explained that the class included members whose prop-

erty values had been reduced by an amount between 24.4449 and 25.44449 %.

accrues"); *Mitchell Energy Corp. v. Bart-lett*, 958 S.W.2d 430, 436 (Tex. App.–Fort Worth 1997, pet. denied) (explaining that "[a]n action for permanent damages to property must be brought within two years from the time of discovery of the injury"). Moreover, Asplundh emphasized that although "Texas law allows equitable tolling of a statute of limitations based on late discovery, inadvertent misidentification, incapacity, and other rare equitable grounds, the plaintiffs do not assert those equitable grounds." In addition, Asplundh urged that the only tolling basis alleged by the Bastrop Plaintiffs was "the theory that the statute of limitations was tolled while the unsuccessful class petition was pending" but that "[t]he Texas Supreme Court has never recognized this type of class-action tolling, which was created by the federal courts." Alternatively, Asplundh argued that even if the doctrine applied to Texas class actions, the doctrine would not have tolled the nuisance and trespass claims not alleged in the class action. Accordingly, Asplundh urged the district court to grant a partial summary judgment and dismiss "as time-barred" any relief pursued beyond the "diminution in land value" to the Bastrop Plaintiffs' properties alleged in the class action. Finally, Asplundh asked the district court to authorize "an interlocutory appeal from any adverse ruling on" Asplundh's summary-judgment motion.

Subsequent to Asplundh filing its motion, the Bastrop Plaintiffs filed a joint response urging the district court to deny Asplundh's motion for summary judgment. In their response, the Bastrop Plaintiffs acknowledged that the three suits had been filed more than two years after the fire and that the applicable statute of limitations was two years, but they asserted that the filing of the class action "tolled limitations for all persons ... that held an ownership interest in property located within Bastrop County, Texas that was partially or completely burned by the complex fire from the date of" the filing of the class action until the district court "signed an order ... denying class certification." As support for this assertion, the Bastrop Plaintiffs relied on a tolling doctrine articulated by the Supreme Court in the class-action context. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Relying on that case as well as other cases applying that doctrine, the Bastrop Plaintiffs urged that the doctrine applies under Texas law and, accordingly, that "Asplundh's Motion fails as a matter of law and should be denied in its entirety."

After convening a hearing on the motion for summary judgment and reviewing the parties' filings, the district court denied Asplundh's motion. In particular, the district court determined that the filing of the class action "and the subsequent amendments thereto tolled the statute of limitations for the members of the putative classes respectively asserted by the class petition and its amendments, through the date of the" denial of class certification. In addition, the district court determined "that the causes of action asserted by Plaintiffs, members of the various putative classes respectively asserted by the class petitions, were timely filed, because the causes of action asserted by Plaintiffs are either the same causes of action asserted by the various putative classes or share a common factual basis and legal nexus as the causes of action asserted by the putative classes." Further, the district court concluded "that because the statute of limitations applicable to the causes of action now asserted by Plaintiffs was tolled, the statute of limitations does not bar the pleaded causes of action or remedies, irrespective of whether such causes of action or remedies were sought by any of the various class petitions." In addition, the

district court gave permission for Asplundh to file a permissive appeal regarding the following two questions of law: "Did the *American Pipe* tolling doctrine toll the statute of limitations for putative class members pending a ruling on class certification," and "[i]f so, was the statute of limitations tolled for Plaintiffs' claims in this case in respect to all causes of action and remedies sought by Plaintiffs, irrespective of whether those causes of action and remedies were expressly included in the class petition?"

Following the district court's ruling, Asplundh filed an unopposed petition for permissive appeal, and this Court granted the petition. *See* Tex. Civ. Prac. & Rem. Code § 51.014(d), (f).

## STANDARD OF REVIEW

When reviewing the denial of a summary judgment, we apply the same standard used in reviewing the grant of a summary judgment, *El Paso Cty. v. Ontiveros*, 36 S.W.3d 711, 714–15 (Tex. App.–El Paso 2001, no pet.), which is a de novo standard, *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In a traditional summary-judgment motion, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). We take as true evidence favorable to the nonmovant and resolve all doubts in its favor. *Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004); *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995). The movant is entitled to summary judgment if the evidence disproves, as a matter of law, at least one element of each of the plaintiff's causes of action or conclusively establishes each element of an affirmative defense. *Friendswood Dev. Co. v.*

*McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *see Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). When moving for summary judgment based on the affirmative defense of limitations, the defendant has the burden of "conclusively negat[ing] any relevant tolling doctrines the plaintiff asserted in the trial court." *Diaz v. Westphal*, 941 S.W.2d 96, 97–98 (Tex. 1997). "Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment." *Mims–Brown v. Brown*, 428 S.W.3d 366, 371 (Tex. App.–Dallas 2014, no pet.).

## DISCUSSION

### Tolling Under Texas Law

■ In its first issue on appeal, Asplundh asserts that the district court erred by denying Asplundh's summary-judgment motion because "[t]he *American Pipe* tolling doctrine did not toll the statute of limitations for the putative class members pending a ruling on class certification."

In *American Pipe*, "the State of Utah commenced a civil action ... against the petitioners" in federal court, and "[t]he suit purported to be brought as a class action." 414 U.S. at 541, 94 S.Ct. 756. Following the filing of the suit by the State of Utah, "the petitioners moved for an order ... that the suit could not be maintained as a class action," and the motion was granted. *Id.* at 542–43, 94 S.Ct. 756. Shortly after the trial court's ruling, "the respondents, ... all of which had been claimed as members of the original class, filed motions to intervene as plaintiffs in Utah's action." *Id.* at 543–44, 94 S.Ct. 756. The trial court denied the motions to intervene and concluded that the statute of limitations "had run as to all these respondents and had not been tolled by the insti-

tution of the class action in their behalf." *Id.* at 544, 94 S.Ct. 756.

On appeal, the Supreme Court held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class" and that the motions to intervene "were timely" because the intervenors filed their motions eight days after the trial court determined that the suit filed by the State of Utah could not be maintained as a class action and because "[t]he class suit brought by Utah was filed with 11 days yet to run in the" tolled statute of limitations. *Id.* at 552–53, 561, 94 S.Ct. 756. In a subsequent case, the Supreme Court determined that tolling applies to class members who later seek to file individual actions and not just to intervenors or named plaintiffs. *See Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345, 348, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *see also Bowen v. New York*, 476 U.S. 467, 481–82, 106 S.Ct.

2022, 90 L.Ed.2d 462 (1986) (ruling that tolling of statute of limitations was appropriate and that tolling also applied to "class claimants who had received a final [administrative] decision ..., but who did not seek judicial review within the statutory 60–day time period"); *Chardon v. Soto*, 462 U.S. 650, 652, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983) (noting that "[t]he parties agree that the statute of limitations was tolled during the pendency of the ... class action").

Although Asplundh acknowledges the existence of this tolling doctrine, it urges that tolling should not be applied to the claims in this case for several reasons. First, Asplundh asserts that the tolling doctrine recognized in *American Pipe* applies only to federal claims and notes that a similar tolling doctrine has not been explicitly adopted by the Texas Supreme Court to apply to class actions governed by Texas law.[3] *Cf. In re National Football*

---

**3.** In addition to asserting that the supreme court has not yet addressed this tolling issue, Asplundh extends this argument in its reply briefing by arguing that the supreme court could not authorize the type of tolling at issue here. Specifically, Asplundh refers to supreme court cases distinguishing between " '[d]eferring accrual and thus delaying the commencement of the limitations period ... from suspending or tolling the running of limitations once the period has begun,' " *see American Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 428, 435 & n.5 (Tex. 2015) (determining that "the limitations period against a partner generally does not commence until after final judgment against the partnership is entered" and quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)); *see also S.V.*, 933 S.W.2d at 25 (concluding that discovery rule did not apply to sex-abuse case to defer starting of limitations period), and in light of that distinction, Asplundh urges that Texas courts may "establish when the particular cause of action at issue 'accrued' " but may not "toll[ ] ... a statute of limitations that had already begun to run, except where such tolling was found in a statute enacted by the Texas Legislature." Although the supreme

court did state in *S.V.* that the discovery rule, fraud, and fraudulent concealment defer the accrual of a cause of action, the court has also more recently referred to some of those concepts as doctrines that "toll[ ] limitations." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015); *see also BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) (explaining that "[a] defendant's fraudulent concealment of wrongdoing may toll the statute of limitations after the cause of action accrues"). In any event, we see nothing in the analysis from either of the cases relied on by Asplundh that leads us to believe that Texas courts may not apply equitable tolling principles unless those doctrines have been expressly codified by the legislature. *See Underkofler v. Vanasek*, 53 S.W.3d 343, 346 (Tex. 2001) (applying judicially created tolling doctrine to extend limitations period for pursuing legal malpractice claim "until the underlying litigation was concluded by the trial's court rendition of a final judgment"); *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157, 158 (Tex. 1991) (determining that "since the statute of limitations was tolled from the time the" legal malpractice "cause of action accrued" until after all appeals on underlying

*League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 419 n.90 (E.D. Pa. 2015) (noting that *American Pipe* "deals only with federal statutes of limitations" and that parties must look to state analogue to see if claims are tolled under state law); *see also Wade v. Danek Med., Inc.*, 5 F.Supp.2d 379, 383 (E.D. Va. 1998) (mem. op.) (explaining that "it is 'doubtful' that" federal cases applying *American Pipe* tolling "would be applicable precedent with regard to a state statute of limitations" (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 213 (2d Cir. 1987))). In addition, Asplundh argues that tolling should not be applied in these circumstances because, unlike other states that have expressly authorized tolling, *see, e.g.*, Or. R. Civ. P. 32N (tolling statute of limitations "for all class members upon the commencement of an action asserting a class action"), the Texas Legislature "has [not] authorized or approved the application of *American Pipe* tolling in Tex-

as," *cf. Valdez v. Hollenbeck*, 465 S.W.3d 217, 227, 229–30 (Tex. 2015) (providing that "[e]nacting statutes of limitations is a legislative prerogative" but considering whether limitations were tolled in light of judicially created tolling doctrines); *Underkofler v. Vanasek*, 53 S.W.3d 343, 346 (Tex. 2001) (deferring "to the Legislature's explicit policy determination that only two exceptions apply to the statute of limitations for" claims under Deceptive Trade Practices–Consumer Protection Act and refusing to apply type of judicially created tolling to those types of claims but then applying that type of tolling to remaining common-law claims). Specifically, Asplundh points to various provisions of chapter sixteen of the Civil Practice and Remedies Code, which sets out the circumstances in which certain types of tolling apply to a variety of claims, and notes that there is no tolling similar to the type of tolling outlined in *American Pipe*.[4]

---

claim had been exhausted, legal malpractice suit was "not barred by the two year statute of limitations").

4. When asserting that tolling should not be applied in this case absent legislative authorization, Asplundh refers to *Riston v. Doe*, 161 S.W.3d 525, 526 (Tex. App.–Houston [14th Dist.] 2004, pet. denied). In that case, Riston filed a personal-injury suit naming various John Doe defendants and later amended her petition to name a specific company after the limitations period had run. *Id.* at 526. In concluding that filing a John Doe petition did not toll limitations in that case, our sister court explained that the legislature "has authorized the use of a 'John Doe' petition to toll limitations as to unknown defendants" "for personal injury suits based on sexual assault" but has not enacted a similar provision "for personal injuries that are not based on sexual assault" and that "[i]f the legislature had intended for the ... statute of limitations to be tolled as to unknown defendants by the filing of a 'John Doe' petition, it could have included such a provision in the statute." *Id.* at 528–29 (discussing section

16.0045 of Civil Practice and Remedies Code).

However, we do not read the analysis from *Riston* as standing for the proposition that tolling in other contexts is only permissible when expressly authorized by the legislature. On the contrary, the court in *Riston* went on to explain how its conclusion was based in large part on the unique potential for abuse if John Doe petitions are allowed to extend limitations beyond those contexts that the legislature has deemed appropriate. *Id.* at 530. In particular, the court stated that "[s]tatutes of limitations are designed to compel the assertion of claims within a reasonable time so the opposing party has a fair opportunity to defend while witnesses are available" and to "prevent fraudulent and stale claims from surprising the other party" but that "allowing a 'John Doe' petition to toll limitations would expand the period for filing claims indefinitely, discourage prompt investigation and resolution of claims, and potentially deny defendants otherwise available defenses." *Id.* The concerns inherent in a John Doe petition are not present here. Moreover, various courts have recognized or employed equitable doc-

*See* Tex. Civ. Prac. & Rem. Code §§ 16.001, .062–.065, .069, .072. Similarly, Asplundh notes that the legislature has authorized the tolling of the statute of limitations due to the filing of a class action but limited the tolling to class actions alleging deceptive, unfair, and prohibited practices under the Insurance Code. *See* Tex. Ins. Code § 541.254. Accordingly, Asplundh contends that if the legislature had intended to include all class actions, it would have done so and that if the type of tolling identified in *American Pipe* applied to Texas class actions generally, there would have been no reason for the legislature to toll the statute of limitations for class actions under the Insurance Code. In addition, Asplundh urges that applying a tolling doctrine created by the judiciary is inconsistent with the purpose of a statute of limitations, which "is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available." *See Moreno v. Sterling Drug., Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *see also Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) (noting that limitations protects defendants "from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence"). In other words, Asplundh argues that the legislature specified that the statute of limitations for the claims at issue in this case is two years and that this Court "should not now substitute its judgment for that of the Legislature."

Although Asplundh is correct that there is no statutory provision expressly authorizing the type of tolling at issue in this case and although the Texas Supreme Court has not yet been called upon to determine whether a tolling doctrine similar to the one recognized in *American Pipe* applies under Texas law for class actions, every case from an intermediate Texas appellate court that has addressed the issue, including one from this Court, has recognized that a similar doctrine exists under Texas law. *See Clark v. ConocoPhillips Co.*, 465 S.W.3d 720, 724 (Tex. App.–Houston [1st Dist.] 2015, no pet.) (explaining "that the filing of a putative class-action suit in a Texas state court suspends the running of limitations for all purported members of the class" under doctrine "commonly known as *American Pipe* tolling" and applying that doctrine to claims in case); *All Am. Life & Cas. Ins. Co. v. Vandeventer*, No. 02-05-00016-CV, 2006 WL 742452, at *2 (Tex. App.–Fort Worth Mar. 23, 2006, no pet.) (mem. op.) (discussing how all "parties agree that … the running of limitations was tolled when" class action was filed); *Ventura v. Banales*, 905 S.W.2d 423, 425 n.2 (Tex. App.–Corpus Christi 1995, orig. proceeding) (recognizing that like federal courts "Texas likewise suspends the applicable statute of limitations as to all purported members of the class upon the filing of the class action, such that any time remaining on the statute of limitations of the class members' individual causes of action on the date of the filing of the lawsuit is restored and begins to run again on the date the class action is dismissed"); *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757 (Tex. App.–Amarillo 1995, writ denied) (noting that appellate courts have held that tolling applies when "the decision of whether a class was entitled to certification" was pending); *Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 863 (Tex.

---

trines extending limitations periods that have not been legislatively enacted. *See Valdez*, 465

S.W.3d at 229.

App.–Beaumont 1995, writ denied) (observing that "statute of limitations was ... tolled subsequent to" filing of class action); *Bara v. Major Funding Corp. Liquidating Trust*, 876 S.W.2d 469, 471–73 (Tex. App.–Austin 1994, writ denied) (explaining that "interests presented" in suit by attorney general "in the public interest" were "closely akin to the interests presented in a class action litigation," stating that "class actions have been held to toll the statute of limitations when a class was decertified or if class members decided to opt out because strict application of the statute of limitations in these circumstances would be inequitable," applying tolling doctrine from *American Pipe* to claims from homeowners who filed their own suit after rejecting settlement offer obtained by attorney general on behalf of "group of homeowners," and concluding that defendant was "not significantly prejudiced, having been put on notice of the claims presented")[5]; *Walker v. Polyscience Corp.*, No. 14-89-00678-CV, 1990 WL 79838, at \*2 (Tex. App.–Houston [14th Dist.] June 14, 1990, no writ) (not designated for publication) (overruling issue asserting that summary judgment was improper on grounds that statute of limitations had passed but applying *American Pipe* tolling, concluding that statute of limitations had passed even though it had been tolled during pendency of class action, and explaining that "the filing of the original class suit suspends the applicable statute of limitations and the period remains tolled for all members of the class until class certification is denied" and that after certification is denied, "the class members must timely intervene or bring individual suits in order to preserve their interest in the subject of the suit"); *Mayfield v. San Jacinto Sav. Ass'n*, 788 S.W.2d 119, 121 (Tex. App.–Houston [14th Dist.] 1990, writ denied) (noting that "a

---

5. In its reply briefs, Asplundh recognizes that this Court has previously determined that the type of tolling at issue in this case applies under Texas law, but Asplundh argues that after we issued our prior opinion, the supreme court released an opinion stating that appellate courts do not have the authority to extend tolling principles to types of claims that the legislature has not itself chosen to afford the benefit of tolling principles. *See Nathan v. Whittington*, 408 S.W.3d 870 (Tex. 2013). Accordingly, Asplundh contends that we should not rely on our prior precedent because it was decided without the benefit of guidance from the supreme court.

We find Asplundh's reliance on *Nathan* to be misplaced. The issue in *Nathan* was whether a statutory provision extending statutes of limitations if a suit is filed in a court that lacks jurisdiction over the dispute also operates to extend the deadline listed in a statute of repose. *Id.* at 872, 874; *see also Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 286, 287 (Tex. 2010) (explaining that statutes of repose are absolute in nature and that " 'while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time' " and noting that "unlike statutes of limitations, a statute of repose is not subject to judicially crafted rules of tolling or deferral" (quoting *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009))). In concluding that the deadline in the statute of repose may not be extended, the supreme court did state that "[t]he task of balancing these equities belongs to the Legislature, not to this Court," but the court made that comment in reference to the legislature's balancing of potential "hardship against the benefits of the certainty that a statute of repose provides by extinguishing claims upon a specific deadline." *Nathan*, 408 S.W.3d at 876. Accordingly, we cannot agree with Asplundh that the supreme court's analysis bears upon the issue presented in this appeal. Further, we note that following the supreme court's decision in *Nathan*, one of our sister courts of appeals endorsed the conclusion by various appellate courts that Texas has a tolling doctrine similar to that of *American Pipe*. *See Clark v. ConocoPhillips Co.*, 465 S.W.3d 720, 724 (Tex. App.–Houston [1st Dist.] 2015, no pet.).

class action suit suspends the running of the statute only as to all members of the class" and concluding that doctrine did not apply because "appellants have failed to show that their claims fall within the class of claims presented in" class action and that even if doctrine applied and if claims were tolled, claims were still untimely); *Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366, 370 (Tex. App.–Houston [14th Dist.] 1987, no writ) (relying on *American Pipe* and holding that "even though the statute of limitations on a class member's individual cause of action would expire during the pendency of a class action, the filing of the class action suspends the applicable statute of limitations as to all purported members of the class ... until class certification is denied," that "the right to pursue an individual cause of action is not foreclosed by decertification of the class," and that "[a]ny time remaining on the statute of limitations of the unnamed property owners' individual cause of action on the date of the filing of the lawsuit was restored and began to run again on the date the class was decertified").[6]

In addition, although the statute of limitations at issue requires that parties bringing suit for property damage file their suits within two years of "the day the cause of action accrues," Tex. Civ. Prac. & Rem. Code § 16.003, the provision does not address tolling or include a list of the types of tolling that can apply to claims asserting property damage, and nothing in the language of that statutory provision indicates that the legislature did not intend for equitable tolling principles to apply to the statute of limitations, *cf. Young v. United States*, 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (explaining that "[i]t is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute" (internal citations and quotation marks omitted)); *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987) (recognizing that state courts have adopted judicial tolling doctrine and "long embraced the principles of *American Pipe*"). In fact, appellate courts have determined that the statute of limitations found in section 16.003 can be extended under equitable doctrines. *See Etan Indus., Inc. v. Lehmann*, 308 S.W.3d 489, 500, 505 (Tex. App.–Austin 2010) (noting that "fraudulent concealment ... defers the accrual of a cause of action" under section 16.003 and that suit was timely because "accrual date ... was tolled"), *rev'd by* 359 S.W.3d 620, 623, 625 (Tex. 2011) (agreeing with intermediate appellate court that "fraudulent concealment of wrongdoing can toll the running of the limitations period" but determining that even if statute of limitations was tolled, suit was still not timely filed). Furthermore, nothing in the Rule governing class

---

**6.** Asplundh asserts that the opinion in *Grant v. Austin Bridge Construction Co.* does not support a conclusion that tolling should apply in this case because the *Grant* case involved a different procedural posture. 725 S.W.2d 366 (Tex. App.–Houston [14th Dist.] 1987, no writ). In *Grant*, the trial court decertified a class action for failing to timely comply with discovery requests, and the class representatives asserted on appeal that it was improper to decertify for a discovery violation because the decertification would result in the innocent class members being denied their now time-barred claims. *Id.* at 368, 370. In rejecting that argument, our sister court of appeals explained that the individual claims were tolled pending the certification ruling. *Id.* at 370. Although the question posed to this Court in this appeal does not involve a determination regarding the propriety or effect of a decertification, we are persuaded by the reasoning from our sister court that the former class members in *Grant* would have been able to pursue their claims, if they chose to, because their claims had been tolled. *See id.* at 370.

actions provides any indication that the tolling at issue does not apply in Texas. *See* Tex. R. Civ. P. 42.[7]

In light of the absence of any statutory language indicating an intention by the legislature to prevent tolling and in light of the significant history of appellate courts applying tolling to class actions, we do not believe that the legislature's decision to authorize tolling for class actions involving certain insurance claims, *see* Tex. Ins. Code § 541.254, without any indication of an intent to limit tolling for non-insurance claims, should compel a determination that the legislature has intended to deny tolling in class-action cases that do not involve those types of insurance claims. *Cf. Felton v. Lovett*, 388 S.W.3d 656, 660 & n.10 (Tex. 2012) (determining that common law applied to situations not governed by statute and noting that statute did "not purport to affect the common law in cases other than those the statute covers"). Moreover, the tolling provision from the Insurance Code

must also be read in conjunction with the provision containing the statute of limitations for the relevant insurance claims that was enacted in 2003.[8] *See* Tex. Ins. Code § 541.162; *see also Southwest Royalties, Inc. v. Combs*, 501 S.W.3d 95, 98 (Tex. App.–Austin 2014) (providing that courts should "look to the entire act and not just to 'isolated portions'" when construing statutes (quoting *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008))), *aff'd by Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400 (Tex. 2016). That provision states that the statute of limitations is two years and expressly includes two situations in which the statute of limitations may be extended beyond that period: to "the date the person . . ., by the exercise of reasonable diligence, should have discovered" the "unfair method" or "unfair or deceptive act or practice" and to an additional 180 days "if the person bringing the action proves that the person's failure to bring the action within that period was caused by the de-

---

**7.** In determining whether tolling applies in this case, we observe that appellate courts have been applying a tolling doctrine to Texas class actions for 30 years. In that time, the legislature has enacted and amended multiple times the statute of limitations at issue in this case as well as other statutes pertaining to limitations and to tolling without expressly limiting or eliminating the equitable tolling doctrine relied on by the various appellate courts listed above. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 16.003, 1985 Tex. Gen. Laws 3242, 3252 (amended 1995, 1997, 2005) (current version at Tex. Civ. Prac. & Rem. Code § 16.003); *cf. F.F.P. Operating Partners v. Duenez*, 237 S.W.3d 680, 692 (Tex. 2007) (presuming that legislature was aware of ruling by supreme court and noting that '"[t]he Legislature must be regarded as intending statutes, when repeatedly reenacted, as in the case here, to be given that interpretation which has been settled by the courts"' (quoting *Wich v. Fleming*, 652 S.W.2d 353, 355 (Tex. 1983))); *Fought v. Solce*, 821 S.W.2d 218, 221–22 (Tex. App.–Houston [1st Dist.] 1991, writ denied) (noting that "'[s]tatutes are to be construed in connection

with, and in harmony with the existing law, . . . including reference to . . . decisions of the courts'" (quoting *City of Ingleside v. Johnson*, 537 S.W.2d 145, 153 (Tex. Civ. App.–Corpus Christi 1976, no writ))). Although inferences "drawn from legislative inaction or acquiescence . . . are of questionable weight," "a slight inference can be drawn when a statute is interpreted by an appellate court and the legislature does not take corrective action." *City of Athens v. MacAvoy*, 353 S.W.3d 905, 910 (Tex. App.–Tyler 2011, pet. denied).

**8.** We also note that the tolling provision was reenacted in 2003. The prior version of section 541.162 similarly tolled insurance claims while a class action was pending and was enacted before *American Pipe* was decided. *See* Act of May 10, 1973, 63d Leg., R.S., ch. 143, § 18(k), 1973 Tex. Gen. Laws 322, 340–41 (amended 2003) (current version at Tex. Ins. Code § 541.254). Accordingly, it is not entirely clear whether the initial enactment of the statute could evidence any intent by the legislature regarding the applicability of tolling in the non-insurance class-action context.

fendant's engaging in conduct solely calculated to induce the person to refrain from or postpone bringing the action." Tex. Ins. Code § 541.162. Unlike the statute at issue in this case, in section 541.162 the legislature has directly limited the extent to which the limitations period for insurance claims may be extended and likely included the class-action-tolling provision to foreclose any argument that the legislature intended for the statute of limitations for bringing individual insurance claims to not be tolled during the pendency of a class-action certification. Accordingly, we do not believe that the enactment of section 541.162 evidenced an intent by the legislature that claims under the Insurance Code are the only types of claims subject to class-action tolling; on the contrary, the enactment under these circumstances seems to be an endorsement of the doctrine in general.

Similarly, we are not persuaded by Asplundh's assertion that the absence of an express authorization for this type of tolling in chapter 16 of the Civil Practice and Remedies Code compels a determination that the legislature intended to foreclose reliance on this equitable doctrine. Nothing in the language from chapter 16 indicates that the types of tolling listed in that chapter represent the only types of tolling permissible under Texas law. *See* Tex. Civ. Prac. & Rem. Code §§ 16.001–.072. In fact, the tolling provisions found in chapter 16 do not include several of the equitable doctrines extending the limitations period relied on by courts, *see, e.g., Valdez*, 465 S.W.3d at 229 (recognizing, in non-class action context, that discovery rule and fraudulent concealment "may delay accrual or toll limitations"); *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 311 (Tex. 2010) (orig. proceeding) (providing that equitable tolling is judicially created doctrine that excuses failure to timely file when plaintiff could not have discovered all in-

formation needed to file suit despite his exercise of reasonable diligence), and the types of tolling included in that chapter and specifically relied on by Asplundh in its brief all represent general tolling concepts that would apply to various types of claims, *see, e.g.*, Tex. Civ. Prac. & Rem. Code §§ 16.001 (tolling causes of action if person is younger than 18 years old or "of unsound mind"), .062 (extending statute of limitations "for 12 months" if person "against whom or in whose favor there may be a cause of action" dies), .063 (stating that statute of limitations is extended if "a person against whom a cause of action may be maintained" is absent from State), .064 (tolling, in certain circumstances, statute of limitations for period of time between when suit is filed in one court without jurisdiction over dispute and when suit is later filed in another court that has jurisdiction), .065 (providing that statute of limitations may be tolled if party acknowledges "justness of a claim … in writing"), .069 (extending statute of limitations for counterclaims or cross claims arising "out of the same transaction or occurrence that is the basis of an action" and that would otherwise be time barred), .072 (stating that "the period for filing suit is extended to include the next day that the county offices are open for business" if statute of limitations "falls on a Saturday, Sunday, or holiday").

In addition, although we agree with Asplundh that tolling is, by definition, antithetical to the deadlines contained in statutes of limitations, that could also be said of any type of tolling doctrine. Furthermore, Asplundh ignores the fact that the delay in filing the three non-class suits was caused by the filing of the class action and that individual suits were only filed after Asplundh successfully challenged the class-action certification. *See ConocoPhillips*, 465 S.W.3d at 727 (noting that Cono-

coPhillips fought class certification for years and that "the result of its success is that it must now defend timely individual lawsuits alleging those same claims").

■ Moreover, the rule governing class actions in Texas "is patterned after its federal counterpart," and for that reason, "federal decisions interpreting class action procedures provide authoritative guidance for the Texas courts." *Ventura*, 905 S.W.2d at 425; *Polyscience Corp.*, 1990 WL 79838, at *2 (same); *see also American Pipe*, 414 U.S. at 559, 94 S.Ct. 756 (explaining that "the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose"). Accordingly, we find persuasive the explanations given by various federal courts regarding the need for tolling in similar circumstances.

For example, when discussing why tolling was warranted, the Supreme Court explained that class actions are "truly representative suit[s] designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe*, 414 U.S. at 550, 94 S.Ct. 756. In addition, the Court stated that "the claimed members of" a class action stand "as parties to the suit until and unless they received notice" of the suit "and cho[o]se not to continue." *Id.* at 551, 94 S.Ct. 756. Further, the Court reasoned that concluding that the claimed members were not parties "would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene,"

which is "precisely the multiplicity of activity" the rule governing class actions "was designed to avoid." *Id.* Accordingly, the Court concluded that to avoid undermining "the efficiency and economy" purposes for using class actions and to avoid the "needless duplication of motions," "the commencement of a class action" must suspend "the applicable statute of limitations." *Id.* at 553, 554, 94 S.Ct. 756. In addition, the Court reasoned that tolling is not inconsistent "with the functional operation of a statute of limitations" because the defendants are notified "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential witnesses who may participate in the judgment." *Id.* at 554, 555, 94 S.Ct. 756. Accordingly, "[w]ithin the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors." *Id.* at 555, 94 S.Ct. 756; *see also Crown, Cork, & Seal Co.*, 462 U.S. at 352–53, 103 S.Ct. 2392 (stating that "[c]lass members who do not file suit while the class action is pending cannot be accused of sleeping on their rights" because rule governing class actions "both permits and encourages class members to rely on the named plaintiffs to press their claims"); *Odle v. Wal-Mart Stores, Inc.*, 747 F.3d 315, 320 (5th Cir. 2014) (noting that "the class action mechanism would not succeed in its goal of reducing repetitious and unnecessary filings if members of a putative class were required to file individual suits to prevent their claims from expiring if certification of the class is denied"). We believe that those same considerations apply to class actions filed under Texas law. *See Conoco-Phillips*, 465 S.W.3d at 727 (stating that

tolling "promotes efficiency and economy" and that contrary conclusion can lead to "proliferation of suits and accompanying waste of party and judicial resources"); *Bara*, 876 S.W.2d at 472 (explaining that statute of limitations is tolled if class action is pursued because strict application would be inequitable and "would leave the class members without a remedy" even though class members diligently pursued claims and even though defendant had been put on notice of pursued claims).

In an alternative set of arguments, Asplundh contends that even if the type of tolling set out in *American Pipe* applied under Texas law, the tolling would only apply to cases in which a class action was certified and then later decertified and would not apply in this case where the purported class action was never certified. As support for this argument, Asplundh refers to opinions by Texas intermediate appellate courts that applied tolling to class actions under Texas law after the class action was decertified or discussing how tolling has been applied when a class has been decertified. *See ConocoPhillips*, 465 S.W.3d at 724; *Bara*, 876 S.W.2d at 471–72.

■ Although those cited cases involved class actions that had been decertified or discussed tolling in the decertification con-

text, nothing in the language of those opinions indicates that tolling is limited to circumstances in which a class action achieves certification. On the contrary, in *ConocoPhillips*, our sister court explained that "the *filing* of a putative class-action suit in a Texas state court suspends the running of limitations for all purported members of the class." 465 S.W.3d at 724 (emphasis added); *see also Koch Oil Co.*, 895 S.W.2d at 863 (noting that "[t]he statute of limitations" was tolled "subsequent to" filing of petition alleging class claims); *Grant*, 725 S.W.2d at 370 (observing that "the *filing* of the class action suspends the applicable statute of limitations" (emphasis added)). Moreover, at least two Texas appellate opinions have analyzed whether claims were timely due to the filing of a class action that was never ultimately certified. *See Polyscience Corp.*, 1990 WL 79838, at *2 (explaining that filing class action tolls statute of limitations "until class certification is denied" and concluding that claims were barred because they were not timely filed even applying tolling); *Mayfield*, 788 S.W.2d at 121 (determining that appellants were not entitled to tolling due to filing of class action that was ultimately denied certification because they "failed to show that their claims fall within the class of claims presented in" class action) [9]; *see also Crown, Cork &*

---

**9.** When discussing whether tolling can apply if the class action was never certified, Asplundh urges that this Court should not rely on *Mayfield v. San Jacinto Savings Ass'n*, 788 S.W.2d 119 (Tex. App.–Houston [14th Dist.] 1990, writ denied), or on *Walker v. Polyscience Corp.*, No. 14-89-00678-CV, 1990 WL 79838 (Tex. App.–Houston [14th Dist.] June 14, 1990, no writ) (not designated for publication). Regarding *Mayfield*, Asplundh contends that the appellate court ultimately made no definitive determination regarding whether tolling could apply in situations in which a class action was never certified because the court concluded that the claims were untimely even if the claims were deemed to have

been tolled. 788 S.W.2d at 121. Although the court in *Mayfield* did make that ultimate conclusion, the court also made the alternative determination, as set out above, that tolling applies even when the class is never certified but that the appellants had failed to show that their claims fell within the claims of the class action. *Id.* Regarding *Polyscience*, Asplundh notes that the opinion is unpublished and, therefore, does not constitute binding authority. Although it is true that opinions designated as "do not publish" issued before 2003 "have no precedential value," Tex. R. App. P. 47.7(b), and although appellate courts have "no obligation to follow [an unpublished] opinion or to specifically distinguish such

*Seal Co.*, 462 U.S. at 354, 103 S.Ct. 2392 (stating that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied"); *Odle*, 747 F.3d at 320 (noting that tolling continues until "district court denies certification" or until trial court "decertifies it" after initially certifying class action); *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1147 (5th Cir. 1997) (stating that under Texas state law, "[a] state (Texas) class action that raises property damage-type claims tolls a Texas statute of limitations pending a certification ruling").[10]

In light of the preceding, particularly the controlling precedent issued by this Court, we must conclude that the statute of limitations for the putative class members was tolled pending a ruling on the class certification. Accordingly, we overrule Asplundh's first issue on appeal.

**Scope of Tolled Claims**

■ In its second issue on appeal, Asplundh contends that if Texas has a tolling doctrine similar to the one discussed in *American Pipe*, the Texas doctrine does not toll the statute of limitations for causes of action and remedies that were not "ex-

pressly included in the class petition." Accordingly, Asplundh contends that the district court should have granted a partial summary judgment in Asplundh's favor "as to causes of action and remedies that were not expressly included in the class petition and that were, in fact, expressly excluded from the class." When presenting this issue on appeal, Asplundh notes that the class-action petition presented class claims for negligence and gross negligence, that the petition alleged other causes of action for the class representatives but did not make those allegations regarding the class, and that the Bastrop Plaintiffs repeatedly stated during the certification hearing that they were not seeking damages for "loss of houses," "loss of animals," "loss of barns," "loss of rental income," or losses stemming from the evacuation and instead urged that they were only seeking damages for "[d]iminished market value" for "[l]and." Further, Asplundh notes that even though no class claims other than negligence and gross negligence were asserted, some of the Bastrop Plaintiffs presented additional claims after decertification for nuisance and trespass and sought recovery for additional types of damages that were not previously pursued. Accord-

opinion," *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.–Amarillo 2003, pet. ref'd), we find the analysis from *Polyscience* persuasive.

10. In another set of related arguments, Asplundh contends that even if Texas law contains a tolling doctrine similar to that of *American Pipe*, the doctrine does not have the same scope as that of *American Pipe*. When making this assertion, Asplundh urges that the reasoning from *Bell v. Showa Denko K.K.* reveals that the full scope of the tolling doctrine outlined in *American Pipe* has not been adopted under Texas law. As set out earlier in the opinion, our sister court in that case recognized that tolling has been applied in class actions under Texas law, but the court refused to extend that doctrine to "the filing of a mass personal injury suit, in a federal court, in another state, with the variety of claims nec-

essarily involved in such a case" because the defendant would not have "notice of the type and potential number of the claims against it." 899 S.W.2d 749, 758 (Tex. App.–Amarillo 1995, writ denied); *see Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1147 & n.2 (5th Cir. 1997) (noting that *Bell* case makes it "unclear whether … a *federal* class action filed in Texas or in any other State would ever toll a Texas statute of limitations" and that *Bell* demonstrated that there is "little vitality" to argument that "Texas' tolling rule" is "the same as the federal rule"). Assuming without deciding that the described tolling limitation is proper, we note that the limitation would not apply in this case where the class action and the individual suits present claims arising under Texas law and where the two sets of suits were filed in Texas.

ingly, Asplundh contends that it was not provided "reasonable notice ... regarding the scope and type of claims now being asserted" and urges this Court to conclude that the statute of limitations for nuisance and trespass were not tolled and that the Bastrop Plaintiffs may not seek relief for damages other than the "alleged diminution in land value."

As an initial matter, we note that none of the Texas cases discussing tolling for Texas class actions directly sets out the scope of claims that are tolled pending a certification decision. However, we also note that this Court has applied tolling to additional non-class claims that were later alleged in individual suits. In *Bara*, homeowners rejected a settlement offer obtained by the attorney general through a suit similar to a class action that was filed on behalf of several homeowners "in the public interest." 876 S.W.2d at 471. The suit by the attorney general alleged violations of the Deceptive Trade Practices-Consumer Protection Act. *Id.* After the homeowners rejected the settlement offer, they filed their own suit also alleging violations of the Act but adding claims for

fraud and usury. *Id.* When addressing whether the claims were barred by the corresponding statutes of limitations, this Court "appl[ied] tolling principles to the attorney general's *de facto* class action" and concluded that the new claims for "fraud and usury survive[d]." *Id.* at 473.[11]

Because no Texas state court has directly addressed the scope of tolled claims, we now examine how federal courts have handled the issue. In *American Pipe*, the Supreme Court seemed to recognize that tolling may "in certain situations" allow plaintiffs to raise "issues not presented in the class action complaint" but warned that adding new claims may not provide defendants with sufficient "notice of the nature of the claims against them." 414 U.S. at 555 n.25, 94 S.Ct. 756. Building on that concern about defendants having sufficient notice before additional claims should be allowed, the concurring opinion in *American Pipe* discussed procedures that might be applied to "preserve a defendant whole against prejudice arising from claims for which he has received no prior notice." *Id.* at 562, 94 S.Ct. 756 (Blackmun, J., concurring). In a similar

---

11. In its brief, Asplundh cites *Bell v. Showa Denko K.K.*, 899 S.W.2d 749 (Tex. App.–Amarillo 1995, writ denied), *Bara v. Major Funding Corp. Liquidating Trust*, 876 S.W.2d 469 (Tex. App.–Austin 1994, writ denied), and *Mayfield v. San Jacinto Savings Ass'n*, 788 S.W.2d 119 (Tex. App.–Houston [14th Dist.] 1990, writ denied), as standing for the proposition that claims other than the ones asserted in the class action are not tolled. However, we find Asplundh's reliance on these cases to be misplaced. Asplundh points out that in *Bell* the appellate court included the following language in its opinion: "[t]hat distinction is important in determining whether the defendants have received fair notice of the existence of a claim by the filing of a class suit." 899 S.W.2d at 758. Rather than commenting on whether tolling would apply to additional claims in the circumstances present here, the appellate court was considering whether "the filing of a mass personal injury suit, in a

federal court, in another state, ... entitled a plaintiff to a tolling of the limitations" for Texas claims. *Id.* In *Bara*, as emphasized by Asplundh, this Court explained that the purposes of a statute of limitations are served by tolling claims when a class action is filed because the defendants are placed on notice "of the *specific* substantive allegations being brought against them" and "of the number of potential" plaintiffs, 876 S.W.2d at 472 (emphasis added), but this Court ultimately determined that tolling applied to new claims that were added after a settlement offer was rejected and after an individual (non-class) suit was filed, *id.* at 473. Finally, in *Mayfield*, the appellate court did not decide whether nonclass claims of members were tolled during the pendency of a certification request and instead concluded that the plaintiffs in question had not shown that they were members of the class action. 788 S.W.2d at 121.

concurring opinion in a later case before the Supreme Court, the concurrence suggested that the "generous" "tolling rule" from *American Pipe* "should not be read ... as leaving a plaintiff free to raise different or peripheral claims following denial of class status," that "[c]laims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations," and that courts must "ensure that the" subsequent non-class suit only "raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit.'" *Crown, Cork, & Seal Co.*, 462 U.S. at 354–55, 103 S.Ct. 2392 (Powell, J., concurring) (quoting *American Pipe*, 414 U.S. at 562, 94 S.Ct. 756 (Blackmun, J., concurring)). In an opinion issued after *American Pipe*, the Supreme Court determined that the filing "of a charge of employment discrimination with the Equal Employment Opportunity Commission" under the Civil Rights Act did not toll "the running of the period of limitation applicable to an action, based on the same facts, instituted under" the federal statutory scheme relating "primarily to racial discrimination in the making and enforcement of contracts." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 455, 459, 467, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). In reaching its conclusion, the Supreme Court noted the "independence of the avenues of relief available" under the administrative and the statutory remedies and remarked that "the tolling effect given to the timely prior filings in *American Pipe* ... depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted" and, accordingly, "operated to avoid the evil against which the statute of limitations was designed to protect." *Id.* at 460, 467, 95 S.Ct. 1716. In a footnote discussing why it would be inappropriate to tack the stat-

utory limitations "period to the frequently protracted period of [Equal Employment Opportunity Commission] consideration," the Court reasoned that "[o]nly where there is complete identity of the causes of action will the" tolling "protections ... necessarily exist." *Id.* at 467, 95 S.Ct. 1716 n.14.

In reconciling the statements in *American Pipe* and the concurring opinions discussed above that seem to suggest that the addition of some new claims in a non-class suit might be permissible in certain circumstances with the more restrictive language in *Johnson*, federal courts have recognized the "narrowness" of the *American Pipe* doctrine. *See In re Commonwealth Oil/Tesoro Petrol. Corp. Sec. Litig.*, 467 F.Supp. 227, 259 (W.D. Tex. 1979); *see also id.* at 260 (determining that class action asserting claims under federal regulations did not toll federal securities claims under United States Code because two types of claims had "different" "factual bases" and noting that statutory claims, unlike regulatory claims, alleged that "defendants made misstatements in the Registration Statement and prospectus"). However, although federal courts have noted that the Supreme Court stated in the footnote in *Johnson* that tolling applies when there is "complete identity of the causes," courts have reasoned that the comment was limited to the facts of that case in which the Court was explaining that it was not certain that filing an administrative complaint with the Equal Employment Opportunity Commission would provide the type of notice needed for tolling to apply to the federal statutory claim because of the congressional intent that the two types of claims were "'independent' administrative and judicial remedies." *In re Independent Serv. Orgs. Antitrust Litig.*, No. MDL-1021, 1997 WL 161940, at *4 (D. Kan. Mar. 12, 1997) (mem. op. and order) (quoting

and discussing *Johnson*, 421 U.S. at 460–61, 467 n.14, 95 S.Ct. 1716). Further, courts have recognized that the Supreme Court did not hold that tolling is only appropriate if identical causes of action are presented in both proceedings. *See id.* at *4; *see also In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 465 F.Supp.2d 687, 718 (S.D. Tex. 2006) (noting that "[t]he majority of courts have ... concluded that subsequent individual claims, filed after denial of class certification or after granting class certification and opting out, need not be identical to the original class action's for tolling to apply"). *But see In re Commonwealth Oil/Tesoro Petrol. Corp. Sec. Litig.*, 467 F.Supp. at 259 (commenting that Supreme Court has determined that tolling did not apply even to claims "based on the same set of factual circumstances" as class claims).

Accordingly, federal courts have determined that new claims presented by plaintiffs after a class-action certification has been denied are tolled if the claims are "substantially similar" to the class claims, meaning that they "share a common factual basis and legal nexus so that the defendant would rely on the same evidence and witnesses in his defense." *See In re Enron Corp. Sec.*, 465 F.Supp.2d at 718–19 (concluding that *American Pipe* would extend tolling to "claims based on the same operative facts" and requiring "a showing of the same or very similar elements" because defendants would have notice and would be allowed "to rely on the same evidence and witnesses in their defenses"); *see also Cullen*, 811 F.2d at 720–21 (applying tolling to federal claim based on filing of state class-action suit relying on different legal theory than federal one because factual bases for two claims were same and alleged coercion, because witnesses and evidence were same, and because defendant was on notice to preserve evidence after being sued in state case and explaining that rule only

allowing tolling for identical claims "would encourage and require absent class members to file protective motions to intervene and assert their new legal theories prior to class certification, thereby producing the very result [ ] courts seek to prevent by such tolling, *i.e.*, 'court congestion, wasted paperwork and expense' " (quoting *Yollin v. Holland Am. Cruises, Inc.*, 97 A.D.2d 720, 721, 468 N.Y.S.2d 873 (N.Y. 1st Dep't 1983))); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) (finding "no persuasive authority for the rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled" and explaining that requiring identity of claims "would be illogical because one of the primary reasons a member will opt out of a class suit is that she has strong individual claims against the defendant that she believes will not be redressed by the overall class settlement"); *Sellers v. Bragg*, No. 04C3663, 2005 WL 1667406, at *6 (N.D. Ill. July 13, 2005) (mem. op. and order) (noting that "[f]or tolling to apply, claims do not have to be identical, but only substantially similar to the putative class claims brought in the original class action"); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 351 (E.D. Pa. 2004) (mem. op.) (same); *Cowles v. Bank W.*, 476 Mich. 1, 719 N.W.2d 94, 105 (2006) (rejecting argument that only identical claims are tolled and stating that "a class-action complaint tolls the period of limitations for a class member's claim that arises out of the same factual and legal nexus as long as the defendant has notice of the class member's claim and the number and generic identities of the potential plaintiffs"). *But see In re Commonwealth Oil/Tesoro Petrol. Corp. Sec. Litig.*, 467 F.Supp. at 259–60 (determining that tolling did not apply, in part, because new claim has different burden of proof and because new claim is not "a different legal theory

based on the same facts" and instead alleges new events not mentioned in original complaint).

In the class petition, the Bastrop Plaintiffs asserted claims for negligence and for gross negligence. Regarding their negligence claims, the Bastrop Plaintiffs urged that Asplundh was contractually obligated to maintain power-line clearance; inspect trees, brush, and undergrowth near power lines; and trim and remove limbs, branches, and undergrowth near power lines. Further, the Bastrop Plaintiffs urged that Asplundh had "a duty to apply a high level of care" to its contractual duties and "to use its skill, prudence, judgment and diligence to inspect, identify, mark, notify, trim, remove and manage the trees, brush, and vegetative undergrowth." In addition, the Bastrop Plaintiffs alleged that Asplundh had a duty to perform its obligations "in a careful manner to protect the neighboring landowners from the risk." Moreover, the Bastrop Plaintiffs contended that Asplundh failed to perform its contractual obligations and that "Asplundh's failure to keep [the] easements free and clear of trees and vegetation ... was a proximate cause of the fire and the resulting damages to Plaintiffs." Similarly, the Bastrop Plaintiffs urged that "Asplundh was well aware of the dangerous conditions" present on the property stemming from "the extreme heat and drought conditions" and "consciously disregarded" the risk that a fire might start. Regarding their gross-negligence claim, the Bastrop Plaintiffs repeated Asplundh's contractual obligations and alleged failures to comply with those obligations and asserted that Asplundh failed to perform those obligations "with conscious disregard for the safety and welfare of Plaintiffs' rights" and with the knowledge that "a fire was inevitable" if it did not perform its contractual obligations. In addition, the Bastrop Plaintiffs asserted that Asplundh was aware of

the exceptional drought conditions and of "the extreme risks involved" and that Asplundh "was specifically retained ... for the very purpose of eliminating the threat of fire." In light of the these allegations, the Bastrop Plaintiffs sought "to recover for the damages for diminished land value losses due to plant life, trees, shrubs and wildlife damaged and/or destroyed by fire."

Following the certification denial, the now-three groups of plaintiffs filled petitions reasserting their negligence and gross-negligence claims. In addition, the Goertz and Abshire groups of plaintiffs added claims for trespass and nuisance. Regarding the trespass claims, those plaintiffs repeated Asplundh's alleged contractual obligations and failures to comply, argued that Asplundh "allowed dry vegetation [to] accumulate" on the utility easements, asserted that "Asplundh permitted the" fire to ignite and "spread out of control," urged that allowing the fire to ignite and spread constituted "a physical, intentional and voluntary entry of Plaintiff's property," and asserted that the plaintiffs "did not grant permission for Asplundh to cause The Fire to enter their properties." Regarding the nuisance claims, the plaintiffs in the two groups asserted that Asplundh failed to maintain the utility easement, that those acts and omissions created a nuisance, that the plaintiffs' "property rights and privileges in respect to the use and enjoyment of certain lands" were affected by Asplundh's "acts and omissions," and that the plaintiffs "suffered property damage and/or personal injury" resulting from the creation of the nuisance. Further, the plaintiffs contended that Asplundh's conduct was "negligent, intentional, and/or abnormal and out of place given the circumstances" and given the "recognition of power line fire threats." Alternatively, the plaintiffs alleged that Asplundh's "acts

and/or omissions" created a public nuisance, *see* Tex. Health & Safety Code § 343.011(b), (c)(10) (defining "public nuisance" as including discarding refuse on utility easement), that the creation of the public nuisance "unreasonably interfered with" the plaintiffs' ability to use their property, and that the plaintiffs suffered "special harm" from the deprivation of their use of their properties. In addition, the Abshire plaintiffs sought additional "actual or compensatory damages" that were not originally listed in the class petition.[12]

■ In addition to a comparison of the class and individual petitions, an examination of the various filings in the consolidated proceeding involving the Bastrop Plaintiffs' class action and the original plaintiffs seems relevant under these circumstances to the resolution of this issue.[13] As discussed earlier, the suits were consolidated for, among other reasons, discovery purposes. The original plaintiffs presented claims for negligence, gross negligence, nuisance, and trespass based on the same factual allegations underlying the Bastrop Plaintiffs' class claims. *Cf. Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 WL 4389689, at \*16 (C.D. Cal. May 5, 2011) (order) (concluding that *American Pipe*

12. The latest petition for the Abshire plaintiffs that is part of the record before this Court shows that those plaintiffs sought recovery for mental anguish and personal-injury damages, including loss of household services, physical pain and suffering, physical impairment, loss of earning capacity, and loss of consortium. In their appellees' brief, the Bastrop Plaintiffs stated that the Abshire plaintiffs' have filed an amended petition and that the petition no longer seeks recovery for those types of damages and now solely seeks recovery for property damages. Accordingly, the list of damages pursued by the Abshire plaintiffs is as follows:

1. Valuation damages for injury to real property that may be characterized as permanent, whether measured by market value, actual/intrinsic value;
2. Repair damages for injury to real property that may be characterized as temporary, whether measured by cost of repair, loss of use, or lost profits;
3. Valuation damages for injury to vegetation on real property, whether measured by market value, manufactured value, or actual/intrinsic value;
4. Restoration damages for injury to vegetation on real property;
5. Valuation damages for injury to fixtures on real property, whether measured by market value or actual/intrinsic value;
6. Repair damages for injury to fixtures on real property, whether measured by cost of repair or loss of use;
7. Valuation damages for injury to improvements on real property, whether measured by market value or actual/intrinsic value;
8. Repair damages for injury to improvements on real property, whether measured by cost of repair or loss of use;
9. Valuation damages for injury to personal property, whether measured by market value, replacement value, actual/intrinsic value, or sentimental value;
10. Cost of repair for loss or reduction in value of personal property, not duplicative of valuation damages;
11. Loss of use of personal property;
12. Lost profits due to injury of personal property, interfering with Plaintiffs' business; [and]

. . .

14. Remediation damages necessary to restore Plaintiffs' personal property and improvements to real property to their original condition prior to injury[.]

13. During the summary-judgment hearing, the parties did not seek to admit the pleadings from the consolidated proceeding into evidence, but a trial court is presumed to have taken notice of its own records in a case because "[a] trial judge judicially knows what has previously taken place in the case on trial." *See Estate of Hoskins*, 501 S.W.3d 295, 310 (Tex. App.–Corpus Christi 2016, no pet.); *see also Office of Pub. Util. Counsel v. Public Util. Comm'n*, 878 S.W.2d 598, 600 (Tex. 1994) (providing that "[a] court of appeals has the power to take judicial notice for the first time on appeal").

tolling should apply to claim that was abandoned in putative class action but reasserted later because defendant would not be subject "to any unfair surprise—the charges against him ... arise from the same transactions and wrongful acts"). Further, when the cases were consolidated, Asplundh filed a motion for summary judgment seeking to dismiss all four claims. For these reasons and in this context, it seems safe to conclude that Asplundh was aware of the nature of the claims.

In light of the above allegations pertaining to the two new claims, we must conclude that the trespass and nuisance claims share a common factual basis and legal nexus to the class claims against Asplundh because they all rely on the same alleged acts and omissions by Asplundh, urge that those acts and omissions led to the ignition of the fire, and assert that the fire damaged the properties belonging to the plaintiffs. Accordingly, Asplundh was on notice of the nature of the claims against it, of the identity and number of the plaintiffs, and of the need to preserve evidence, and Asplundh will rely on the same evidence and witnesses in its defense against all of the claims.[14] *See In re Enron Corp. Sec.*, 465 F.Supp.2d at 718–19; *cf. United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 n.14, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977) (noting that "motion to intervene was filed less than three weeks after the 'settlement' " and observing that "[t]here is no reason to believe that in that short period of time United discarded evidence or was otherwise prejudiced"); *Cowles*, 719 N.W.2d at 106 (explaining that "crucial to whether

the period of limitations is tolled under the class action tolling doctrine ... is notice to the defendant of both · the claims being brought and the number and identities of potential plaintiffs"). Having determined that the claims share a common factual basis and legal nexus, we must also conclude that the statutes of limitations for the nuisance and trespass claims were tolled while the class-action petition was pending.

As set out above, Asplundh also asserts that even if this Court determines that the statutes of limitations for the trespass and nuisance causes of action were tolled, we should still determine that the plaintiffs may not seek as compensation the types of additional damages listed in the non-class petitions and should instead be limited solely to a recovery for the diminution in value of the Bastrop Plaintiffs' properties. As an initial matter, we note that in the final amended class petition, the named representatives informed Asplundh that if the class was not certified, they intended to pursue the actual damages alleged in the class action as well as "their respective and consequential damages resulting from" the acts and omissions, "including but not limited to damages for loss of fence and/or structures." More importantly, having reviewed the cases applying tolling in the class-action context, we have found nothing to support a separate determination that the tolling doctrine could somehow limit the types of damages and remedies that may be pursued in a cause of action that was tolled during the pendency of a class action. *Cf. ConocoPhillips*, 465 S.W.3d at 725 (determining that tolling

---

14. Although Asplundh urges in its reply briefs that it has no obligation to show that applying tolling in this case will prejudice Asplundh's defense in some manner and then argues that it was in fact prejudiced because it was unable to conduct discovery regarding the additional types of damages that are now being sought, we believe it is worth noting that Asplundh has referred to no evidence showing that it will be prejudiced regarding its ability to defend itself against the non-damage elements of the nuisance and trespass claims.

applied to individual claims regarding underpayment of royalties after determining that individual claims fell within class claims and noting that although damages sought in individual claims were based on expert's market-value calculation rather than "proceeds or market value," individual "claims for underpayment of royalties and breach of marketing obligations" fell within class "regardless of how his damages are calculated"); *see also In re Independent Serv. Orgs. Antitrust Litig.*, 1997 WL 161940, at *3, *6 (noting that class action asserted claims for overcharges but that non-class suit requested damages "for lost profits" and explaining that "[a]lthough the precise remedy requested in the" class action and non-class suit "may be slightly different, both actions allege but a single cause of action or claim" for purposes of determining whether tolling applied). In making this determination, we express no opinion on whether any or all of the additional types of damages listed above are in fact permissible recoveries for the types of claims made or on whether the plaintiffs will ultimately be entitled to those types of recovery.

For all the reasons previously given, we conclude that, under the circumstances of this case, the claims for nuisance and trespass were tolled during the pendency of the class action and, therefore, that the district court did not err by denying Asplundh's alternative ground for partial summary judgment. Accordingly, we overrule Asplundh's second issue on appeal.[15]

---

15. In its summary judgment motion, Asplundh argued that the claims from a subset of the Bastrop Plaintiffs should be dismissed as time barred because those plaintiffs did not meet the definition of the proposed class and, therefore, should not have benefitted from any tolling during the pendency of the certification determination. In its prayer for relief in its appellant's brief, Asplundh asks as an alternative form of relief that this Court "ren-

## CONCLUSION

Having overruled Asplundh's two issues on appeal, we affirm the district court's order denying Asplundh's motion for summary judgment and remand for further proceedings.

Affirmed

der a take-nothing judgment on those claims asserted by individuals not falling within the last proposed class definition." However, a determination regarding whether those individuals fell within the class definition is not one of the limited issues before this Court in this permissive appeal. Accordingly, we make no determination regarding the alternative requested relief.